BOONSTRA, J.
Defendant appeals by right his conviction of possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(iii), following a jury trial. We remand this case to allow defendant to file a motion to dismiss the charges against him and for an evidentiary hearing to determine whether defendant can present an affirmative defense pursuant to § 8 of the Michigan Medical Marihuana[1] Act (MMMA), MCL 333.26421 et seq. *594 We also determine, as an issue of first impression, that under the existing statutory scheme, an edible product (in this case a brownie) containing delta-9tetrahydrocannabinol (THC) extracted from marijuana resin is not usable marijuana under the MMMA. See MCL 333.26423(k).
I. BASIC FACTS AND PROCEDURAL HISTORY
Following a traffic stop on January 27, 2011, defendant was charged with possession with intent to deliver marijuana and driving with a suspended license. Defendant moved to dismiss the possession charge, arguing that the prosecution was improper because he had with him at the time of the traffic stop a medical marijuana card for himself, caregiver applications for four patients, and a caregiver certificate. He also argued that the gross weight of the brownies found in his vehicle should not be considered toward the amount limit set forth in § 4 of the MMMA, MCL 333.26424. Rather, only the net weight of the active ingredient of marijuana contained in the brownies should be considered, and § 4 would then prohibit his prosecution.[2] The trial court denied defendant’s motion to dismiss, ruled that the entire weight of the brownies would be considered as a marijuana mixture, and ruled that defendant could not use the medical marijuana defense at trial. Although the trial court gave defendant permission to file an interlocutory appeal, no such appeal was ever filed.
*595 Defendant was charged with possession of marijuana found in various locations within the vehicle, including mason jars, plastic hags, and a hinder of plastic pouches, as well as containers of brownies that were individually labeled to indicate the weight of the brownie and its content of marijuana for medical use (e.g., brownie weighing 3.1 ounces and containing 2 grams of medical marijuana). The labels also said: “For medical use only. Keep out of children’s reach, medical marijuana, two grams each.” There were also some sugar oatmeal cookies, labeled as containing 3.75 grams of marijuana each.[3] Prices were written on the bags that contained marijuana. Various packaging materials—including Glad Zipper bags, labels, price labels, plastic portion cup lids, a vacuum sealer, and a grinder—were found. The police also found a tally sheet, listing people’s names, the amount purchased, and the amount paid. For the most part, the prices and quantities matched the training and experience of the prosecution’s expert witness regarding the street values of marijuana.
A brownie was tested by a forensic chemist and found to contain THC, a schedule 1 controlled substance. The chemist could not determine how much THC was in the brownie, nor could the chemist detect any plant material in the brownie by examining it microscopically. The chemist testified that the weight of “the total mixture that contains the THC,” i.e., one brownie, was 69.08 grams;[4] the other brownies were of similar size. The chemist also testified that THC extraction techniques involve extracting THC from the resin of the marijuana *596 plant. Testimony from a prosecution expert indicated that 9.1 ounces of usable marijuana (separate from the baked goods) was found, as well as 54.9 ounces of brownies containing THC. At his preliminary examination, defendant acknowledged that THC was extracted from marijuana and infused into the brownies. Defendant’s counsel at the preliminary exam also stated that the brownies were “not made of . . . ground up marijuana,” but were made with a THC extract called “cannabutter.”
The jury returned a guilty verdict to the charge of possession with intent to deliver the controlled substance marijuana. The trial court sentenced defendant to 3 years’ probation with 33 days in jail. This appeal followed.
II. STANDARD OF REVIEW
This case presents issues of statutory interpretation. We review questions of statutory interpretation de novo. People v Kolanek, 491 Mich 382, 393; 817 NW2d 528 (2012).
Because the MMMA resulted from the passage of a citizens’ initiative, our interpretation of language of the MMMA is guided by the established principles concerning the interpretation of voter initiatives:
[B]ecause the MMMA was the result of a voter initiative, our goal is to ascertain and give effect to the intent of the electorate, rather than the Legislature, as reflected in the language of the law itself. We must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate. [Id. at 397 (citations omitted).]
See also People v Redden, 290 Mich App 65, 76; 799 NW2d 184 (2010). Our analysis is also guided by our established canons of statutory interpretation. We pre *597 sume that the meaning as plainly expressed in the statute is what was intended, and we avoid a construction that would render any part of the statute surplus-age or nugatory. Id. Statutes that relate to the same subject, that is to say the same person or thing or class of persons or things, should be harmonized. People v Shakur, 280 Mich App 203, 209; 760 NW2d 272 (2008).
III. THE MMMA GENERALLY
Although marijuana remains illegal in Michigan, the MMMA allows the medical use of marijuana by a limited class of individuals. MCL 333.26421 et seq. The history and purpose of the MMMA has been described by our Supreme Court as follows:
The MMMA was proposed in a citizen’s initiative petition, was elector-approved in November 2008, and became effective December 4, 2008. The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an “effort for the health and welfare of [Michigan] citizens.” To meet this end, the MMMA defines the parameters of legal medical-marijuana use, promulgates a scheme for regulating registered patient use and administering the act, and provides for an affirmative defense, as well as penalties for violating the MMMA.
The MMMA does not create a general right for individuals to use and possess marijuana in Michigan. Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law. Rather, the MMMA’s protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals’ marijuana use “is carried out in accordance with the provisions of [the MMMA].” [Kolanek, 491 Mich at 393-394 (citations omitted).]
This action presents issues arising under two sections of the MMMA. Section 4 of the MMMA, *598 MCL 333.26424, grants broad immunity from criminal prosecution and other penalties to qualified patients and caregivers who hold registry identification cards and possess “an amount of marihuana that that does not exceed 2.5 ounces of usable marihuana” or, with respect to a primary caregiver, “2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the [Department of Licensing and Regulatory Affairs’] registration process[.]” MCL 333.26424(a) and (b)(1).
Section 8 of the act, MCL 333.26428, provides an affirmative defense to patients generally for “possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient’s serious or debilitating medical condition or symptoms of the patient’s serious or debilitating medical condition[.]” MCL 333.26428(a)(2). The affirmative defense of § 8 is thus available regardless of the amount of marijuana possessed. A defendant may assert a § 8 defense by filing a motion to dismiss the criminal charges, in which case an evidentiary hearing must be held before trial. MCL 333.26428(b); Kolanek, 491 Mich at 396-397.
Under the MMMA, “ £[m]arihuana’ means that term as defined in section 7106 of the public health code, 1978 PA 368, MCL 333.7106.” MCL 333.26423(e). MCL 333.7106(3) in turn defines “marihuana” as follows:
“Marihuana” means all parts of the plant Canabis [sic] sativa L., growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or *599 preparation of the mature stalks, except the resin extracted therefrom, fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.
Additionally, the MMMA separately defines “usable marihuana” as follows:
“Usable marihuana” means the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant. [MCL 333.26423(k).]
Thus, the definition of “usable marihuana” under the MMMA is narrower than the definition of “marihuana” that is incorporated into the MMMA through the Public Health Code, as is described with greater particularity below.
IV THE MIXTURE ISSUE, AS PRESENTED
Defendant claims that the trial court erroneously denied him the protection of § 4 of the MMMA because the trial court’s determination that he possessed more than the allowable quantity of marijuana under the act was based on the aggregate weight of the baked goods in his possession, rather than the net weight of the THC contained therein. We thus are presented with an issue of first impression: in determining whether the quantity limit of § 4 has been exceeded, is it the aggregate weight of an edible product that is to be considered or, alternatively, is it only the net weight of the marijuana (or its active ingredient) contained in the edible product that is to be considered?
Defendant maintains that the consideration of the aggregate weight of an edible product would “defeat the purpose of the MMMA,” as it would effectively deny the medicinal use of marijuana by a delivery system other than smoking. Defendant argues that the proper course *600 of action would be to consider only the amount of marijuana as was reflected on the labels that defendant had affixed to the brownies.
The prosecution argues, to the contrary, that an edible product constitutes a “mixture” or “preparation” within the MMMA’s definitions of “marihuana” and “usable marihuana” and, therefore, that the entire weight of the edible product should be considered. The prosecution contends that such a reading would be consistent with prior court decisions holding that the weight of a controlled substance for criminal prosecution purposes includes the aggregate weight of the entire mixture or preparation containing the controlled substance.
For the reasons that follow, we conclude that the issue as presented is not properly before us and that it is unnecessary for us to decide that issue in the circumstances presented. Rather, we hold, also as an issue of first impression, that an edible product made with THC extracted from marijuana resin is not usable marijuana under the MMMA. Our resolution of that definitional issue compels us to conclude that we should not reach the mixture issue as presented to us and instead should resolve the issues before us on alternative grounds.
V THE BROWNIES WERE NOT USABLE MARIJUANA UNDER THE MMMA
As noted, the MMMA separately defines “marihuana” and “usable marihuana.” Notably, the definition of “marihuana” includes “all parts” of the cannabis plant, as well as “the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.” MCL 333.7106(3). The definition specifically excludes the “mature stalks” of the plant *601 “except the resin extracted therefrom.” Id. By virtue of that exception, therefore, resin extracted from mature stalks is also expressly included within the definition of “marihuana.” There is no dispute that both the raw marijuana and the brownies found in defendant’s possession constitute marijuana under the MMMA.
By contrast, however, the definition of “usable marihuana” under the MMMA does not include “all parts” of the cannabis plant. More to the point, it specifically does not include “the resin extracted from” the cannabis plant. Nor does it include “the resin extracted” from mature stalks of the plant. Further, it does not include “every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.” Rather, and in stark contrast to the MMMA’s definition of “marihuana,” it includes only “the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof. . . .” MCL 333.26423(k) (emphasis added). The word “thereof” as used in this definition refers back to the immediately preceding phrase “the dried leaves and flowers of the marihuana plant.” Therefore, to constitute usable marijuana under the MMMA, any “mixture or preparation” must be of “the dried leaves or flowers” of the marijuana plant.
The prosecution argues that the resin from which THC is extracted would itself have been extracted from the leaves and flowers of the marijuana plant. Further, the brownies were a “mixture or preparation” of the THC. Therefore, according to the prosecution, the brownies constitute usable marijuana. The prosecution further argues that THC constitutes marijuana under the MMMA, and that THC is “clearly ‘useable’ [sic],” since it is ingested by virtue of ingesting the edible products in which it is contained.
*602 The prosecution offered into evidence the testimony of the forensic chemist who analyzed the brownies[5] in this case. The chemist testified that there was no detectable plantlike material in the brownies, but they contained THC. She defined THC as one of the cannab-inoids or active ingredients found in the marijuana plant. The chemist also testified that THC extraction techniques involve extracting THC from the resin of the marijuana plant. THC could be made synthetically as well. The chemist agreed at trial that both marijuana and THC were controlled substances. At defendant’s preliminary examination, the chemist offered the opinion (which supports the prosecution’s position on appeal) that brownies containing THC constitute usable marijuana under the MMMA because the tested brownie was “the extract from the marijuana plant as added to the—the mixture or the item that is to be consumed.”
At his preliminary examination, defendant acknowledged that THC was extracted from marijuana and infused into the brownies. Defendant’s counsel also stated that the brownies were “not made of. . . ground up marijuana” but were instead made with cannabutter containing THC extract. Defendant therefore argued at his preliminary examination, unsuccessfully, that the brownies were not usable marijuana under the MMMA.
On appeal, defendant does not press this argument; instead, he effectively concedes that point but argues that the proper course of action would have been for the trial court to use the amount of marijuana set forth on the label and count the brownies to see if the active ingredient totaled more than 3.4 ounces (the total *603 amount of usable marijuana that, when added to the 9.1 ounces of raw marijuana found in baggies, defendant arguably would be allowed to possess under § 4). In essence, defendant now seeks to avoid criminal prosecution under our controlled substance possession laws by (a) effectively conceding that the brownies are usable marijuana and thereby gaining protection under § 4 of the MMMA yet (b) seeking to count only the THC-portion of the brownies toward the statutory quantity allowance, even though our possession laws would count the entire weight of the brownies. See MCL 333.7401(2)(d)(¿) through (iii); see also People v Kidd, 121 Mich App 92, 95; 328 NW2d 394 (1982); People v Prediger, 110 Mich App 757, 760; 313 NW2d 103 (1981); People v Lemble, 103 Mich App 220, 222; 303 NW2d 191 (1981). Further, because the evidence reflects that the amount of THC contained in a brownie cannot be measured, he suggests that the courts accept at face value the quantities listed on the labels he affixed to the brownies.
We disagree with both the prosecution and defendant, given the plain language of the MMMA itself.[6] Notably, the MMMA’s definition of “usable marihuana” excludes much of the language found in the definition of “marihuana.” It excludes the phrases “resin extracted from any part of the plant” and “compound, manufacture, salt, derivative ... of the plant or its seeds or resin.” See MCL 333.7106(3); MCL 333.26423(k). It additionally excludes “the resin extracted” from “the mature stalks of the plant.” See MCL 333.7106(3); MCL 333.26423(k). To ignore these exclusions, and to *604 thereby construe the term “usable marihuana” as including a “mixture or preparation” of an extract (THC) of an extract (resin) from the marijuana plant, would alter the plain meaning of the words that the drafters of the MMMA chose to employ. By excluding resin from the definition of “usable marihuana,” as contrasted with the definition of “marihuana,” and defining “usable marihuana” to mean only “the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof” MCL 333.26423(k) (emphasis added), the drafters clearly expressed their intent not to include resin, or a mixture or preparation of resin, within the definition of “usable marihuana.” They therefore expressed their intent not to include a mixture or preparation of an extract of resin. Consequently, an edible product made with THC extracted from resin is excluded from the definition of “usable marihuana.” Rather, under the plain language of the MMMA, the only “mixture or preparation” that falls within the definition of “usable marihuana” is a mixture or preparation of “the dried leaves and flowers of the marihuana plant. ...” Id.
Provisions not included in a statute should not be included by the courts. Mich Basic Prop Ins Ass’n v Office of Fin & Ins Regulation, 288 Mich App 552, 560; 808 NW2d 456 (2010). Further, the use of different terms in a statute suggests different meanings. United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass’n (On Rehearing), 484 Mich 1, 14; 795 NW2d 101 (2009). Finally, although only an aid to interpretation, we note that the maxim expressio unius est exclusio alterius (the expression of one thing suggests the exclusion of all others) means that the express mention of one thing in a statutory provision implies the exclusion of similar things. Johnson v Recca, 492 Mich 169, 176 n 4; 821 NW2d 520 (2012).
*605 Nor are we persuaded by the prosecution’s argument that usable marijuana merely constitutes marijuana that is “usable” and that a brownie containing THC extracted from the resin of a marijuana plant is usable marijuana because it is marijuana that is “usable” simply by virtue of its ingestion. That argument requires a circularity of reasoning that would read into the drafters’ definition of “usable marihuana” a component (resin) that the drafters expressly excluded. Moreover, it ignores the fact that the term “usable marihuana” is not simply a combination of the words “usable” and “marihuana”; rather, it is a term of art specifically defined by the MMMA. We are not at liberty to ignore that definition in favor of our own. See People v Williams, 288 Mich App 67, 74; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012). The drafters’ definition of the term “usable marihuana” clearly was not intended to encompass all marijuana that theoretically is “usable,” in the colloquial meaning of the term, by virtue of its ability to be ingested. Rather, as a term of art, it is designed to identify a subset of marijuana that may be possessed in allowed quantities for purposes of an immunity analysis under § 4 of the MMMA.[7]
We also are not persuaded by the prosecution’s argument that our interpretation of the MMMA’s definition of “usable marihuana” is contrary to the ordinary and customary meaning of the term. See Kolanek, *606 491 Mich at 397 (“We must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate.”)- When a statute provides a definition of a term, we are not “left dependent upon dialect, colloquialism, the language of the arts and sciences, or even the common understanding of the man in the street. We have the act itself. We need not, indeed we must not, search afield for meanings where the act supplies its own.” W S Butterfield Theatres, Inc v Dep’t of Revenue, 353 Mich 345, 350; 91 NW2d 269 (1958); see also Haynes v Neshewat, 477 Mich 29, 35; 729 NW2d 488 (2007).
In defining the parameters of legal medical-marijuana use, the drafters of the MMMA adopted a definition of “usable marihuana” that we believe comports with the voters’ desire to allow limited “medical use” of marijuana and yet not to allow the unfettered use of marijuana generally. MCL 333.26423(f). Given the heightened potency of the THC extract, as compared with “the dried leaves and flowers,” MCL 333.26423(k), this definition of “usable marihuana” (for purposes of establishing limited § 4 immunity) strikes us as a sound and reasoned mechanism to promote the “health and welfare of [Michigan] citizens,” MCL 333.26422(c). It also provides an essential mechanism for implementing the voters’ desire to continue prosecutions for possession and use of marijuana in excess of that which is permitted for medical use.
The evidence reflects that the amount of THC contained in an edible product cannot be measured, at least not with the testing methods commonly used in police laboratories.[8] Therefore, the inclusion of edible prod *607 ucts within the definition of “usable marihuana,” while mandating that only the amount of THC be counted toward the quantity limits of § 4 of the MMMA, as defendant would have us do, would effectively eviscerate the intent of the voters in limiting marijuana to its intended medical use. Given the unmeasurable nature of the highly potent THC contained in these edible products, the health and welfare of Michigan citizens would be threatened, and prosecutions for possession and use of edible products containing higher-than-allowed quantities of THC would be systematically thwarted.
Our interpretation also does not preclude the medical use of marijuana by ingestion of edible products;[9] to the contrary, that use is authorized by the MMMA, within the statutory limitations, provided that the edible product is a “mixture or preparation” of “the dried leaves and flowers of the marihuana plant,” rather than of the more potent THC that is extracted from marijuana resin. MCL 333.26423(k). Again, we find that judgment of the drafters of the MMMA, in so defining “usable marihuana,” to be an appropriate exercise of their duty to define the parameters of the legal use of marijuana for medical purposes.
*608 “Our courts repeatedly emphasize the importance of construing a statute according to its plain language and refraining from interfering with the Legislature’s authority to make policy choices.” People v Adams, 262 Mich App 89, 96; 683 NW2d 729 (2004). We once again emphasize this importance. Under the plain language of the MMMA, the brownies seized from defendant are not encompassed within its definition of “usable marihuana.” Policy-based arguments to the contrary are better made to the Legislature, not the courts.
These principles, and our reading of the MMMA, thus convince us that edible products made with THC extracted from marijuana resin are not usable marijuana under the MMMA. Simply put, the evidence before this Court indicates that the brownies were not a “mixture or preparation” of “dried leaves and flowers of the marihuana plant.” MCL 333.26423(k). Therefore, the brownies were not usable marijuana under the MMMA, and none of the weight of the brownies should have been counted towards the determination of whether defendant possessed more than 12.5 ounces of usable marijuana.
VI. APPLICATION
Having concluded that the brownies in defendant’s possession were not usable marijuana under the MMMA, we must next apply that ruling to the facts of this case and, more specifically, to (a) defendant’s claimed immunity under § 4 of the MMMA and (b) defendant’s claimed right to present a defense under § 8 of the MMMA. We discuss each in turn.
A. DEFENDANT IS NOT ENTITLED TO IMMUNITY UNDER § 4 OF THE MMMA
The language of § 4 indicates that a “qualifying patient” who has been issued and possesses a registry *609 identification card is immune from arrest and prosecution “for the medical use of marihuana in accordance with this act,” provided that he or she possesses “an amount of marihuana that does not exceed 2.5 ounces of usable marihuana .. . MCL 333.26424(a) (emphasis added). A “primary caregiver” who has been issued and possesses a registry identification card also is immune from arrest and prosecution for “assisting a qualifying patient” to whom he or she is connected through the applicable registration process with the “medical use of marihuana in accordance with this act,” again provided that the primary caregiver possesses “an amount of marihuana that does not exceed . .. 2.5 ounces of usable marihuana for each qualifying patient” to whom he or she is connected through the registration process. MCL 333.26424(b)(1) (emphasis added).
Notably, neither of these provisions conditions its immunity on the qualifying patient’s or primary caregiver’s possessing an amount of usable marijuana that does not exceed 2.5 ounces. If they had wished to do so, the drafters of the MMMA could easily have employed such simple and readily understood language. Instead, each of these provisions conditions its immunity on the qualifying patient’s or primary caregiver’s possessing “an amount of marihuana that does not exceed . . . 2.5 ounces of usable marihuana . .. .” MCL 333.26424 (a) and (b)(1) (emphasis added).
This distinction is critical to our analysis because it demonstrates that the drafters of the MMMA chose to provide that, in evaluating a § 4 immunity claim, consideration must be given not only to the amount of usable marijuana that is possessed but, additionally, to the amount of marijuana that is possessed. In other words, consideration must also be given to the posses *610 sion of marijuana that does not fit within the statutory definition of usable marijuana. This is consistent with the MMMA’s use of the term of art “usable marihuana” to define that subset of marijuana that may be possessed in allowed quantities for purposes of an immunity analysis under § 4 of the MMMA.
In short, the question of whether a possessor of marijuana possesses an allowed quantity of usable marijuana is only the beginning of the relevant inquiry under § 4. A further pertinent and necessary inquiry, for purposes of a § 4 analysis, is whether that person possesses any quantity of marijuana that does not constitute usable marijuana under the term-of-art definition of the MMMA. If so, and without regard to the quantity of usable marijuana possessed, the person then does not possess “an amount of marihuana that does not exceed. . . 2.5 ounces of usable marihuana . . . .” MCL 333.26424 (a) and (b)(1) (emphasis added). Instead, he or she then possesses an amount of marijuana that is in excess of the permitted amount of usable marijuana. In other words, the language establishing limited immunity in § 4 of the MMMA expressly conditions that immunity on the person possessing no amount of marijuana that does not qualify as usable marijuana under the applicable definitions.
Defendant was in possession of 9.1 ounces of usable marijuana. Arguably, under the circumstances presented, defendant was entitled to possession of 12.5 ounces of usable marijuana. Therefore, he possessed an amount of usable marijuana that, assuming that all other requirements of § 4 were met, would have qualified him for § 4 immunity. However, defendant also was in possession of brownies containing THC extracted from marijuana resin. For the reasons stated, those brownies did not constitute “usable *611 marihuana” under the statutory definition. The parties agree, however, as do we, that the brownies did constitute “marihuana” under that term’s statutory definition. Possession of THC extracted from marijuana is possession of marijuana. See People v Campbell, 72 Mich App 411, 412; 249 NW2d 870 (1976); see also MCL 333.7106(3). Therefore, defendant was in possession of an amount of marijuana that exceeded the amount of usable marijuana he was allowed to possess. By possessing edible products that were not usable marijuana under the MMMA, but indisputably were marijuana, he failed to meet the requirements for § 4 immunity.
We therefore determine that the trial court reached the right result in denying defendant immunity from prosecution pursuant to § 4 of the MMMA. We do not disturb that result. People v Mayhew, 236 Mich App 112, 118 n 2; 600 NW2d 370 (1999) (“[W]e will not reverse the trial court’s decision where it reached the right result for a wrong reason.”).
B. DEFENDANT IS ENTITLED TO ASSERT A § 8 AFFIRMATIVE DEFENSE
Defendant argues that he was precluded from offering an affirmative defense pursuant to § 8 of the MMMA, MCL 333.26428, by this Court’s decision in People v Anderson, 293 Mich App 33; 809 NW2d 176 (2011), vacated 492 Mich 851 (2012). Because Anderson is no longer good law, defendant argues, his case should be remanded to allow him to pursue an affirmative defense according to the procedure outlined in Kolanek, 491 Mich at 410-413, and People v Bylsma, 493 Mich 17, 35-37; 825 NW2d 543 (2012). As this issue was not raised before the trial court (since Kolanek and Bylsma had not yet been decided by our Supreme Court), we *612 review it for plain error affecting defendant’s substantial rights. People v Carines, 460 Mich 750, 763-764; 597 NW2d 130 (1999).
Section 8 of the MMMA, MCL 333.26428, provides an affirmative defense to patients and primary caregivers when it is demonstrated, inter alia, that the quantity of marijuana collectively possessed was “not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient’s serious or debilitating medical condition or symptoms [thereof].” MCL 333.26428(2). The procedure for asserting the defense is that the defendant files a motion to dismiss the criminal charges and an evidentiary hearing is held before trial. MCL 333.26428(3)(b). A § 8 defense therefore “cannot be asserted for the first time at trial, but must be raised in a pretrial motion for an evidentiary hearing.” Kolanek, 491 Mich at 411.
The affirmative defense of § 8 is available regardless of the amount of marijuana possessed.[10] That is, § 8 *613 (unlike § 4) specifies no particular quantity limit, but instead requires that the amount possessed be “not more than was reasonably necessary” for the statutorily recognized purposes. MCL 333.26428(2). Additionally, § 8 does not refer to “usable marihuana,” but instead states that a patient or primary caregiver, or both, “may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana . .. .” MCL 333.26428(a).
Our Supreme Court has stressed that “[s]ections 4 and 8 provide separate and distinct protections and require different showings” and that “the requirements of § 4 cannot logically be imported into the requirements of § 8 . . . .” Kolanek, 491 Mich at 401-402. Rather, “we must examine these provisions independently.” Bylsma, 493 Mich at 28. Therefore, our decision with regard to defendant’s claim of denial of a § 8 defense does not depend on our analysis under § 4, our conclusion that the brownies possessed by defendant were not usable marijuana under the MMMA, or our conclusion that defendant was not entitled to § 4 immunity.
Defendant unsuccessfully argued, both during his preliminary exam and in a pretrial motion to dismiss, that he was entitled to dismissal of charges under § 4 of the MMMA, as discussed in parts iy V, and VI(A) of this opinion. Defendant did not raise a § 8 argument at any time before trial. When the prosecution specifically requested clarification of whether defendant was requesting a § 8 affirmative defense, defense counsel stated, “Your Honor, actually, the prosecution may be correct in regards to allowing the particular defense; however, I think there’s still a question of fact for the trier of fact of whether he was in compliance with the rules.” Defendant never raised or reserved a § 8 affir *614 mative defense, and the prosecution argues that defendant specifically disclaimed any desire to assert one and, therefore, waived any right to assert a defense under § 8.
However, defendant argues that he that he did not raise this defense before trial because the law at that time provided that a defendant must fulfill the requirements of § 4 before the defendant could raise a § 8 defense. In People v King, 291 Mich App 503, 505, 510; 804 NW2d 911 (2011), rev’d sub nomKolanek, 491 Mich 382 (2012), this Court interpreted the MMMA as requiring a defendant to comply with the requirements of § 4 before asserting an affirmative defense under § 8. Our Supreme Court reversed that decision in Kolanek, holding that “the plain language of § 8 does not require compliance with the requirements of § 4.” Kolanek, 491 Mich at 401. The Court further held that
[ajny defendant, regardless of registration status, who possesses more than 2.5 ounces of usable marijuana or 12 plants not kept in an enclosed, locked facility may satisfy the affirmative defense under § 8. As long as the defendant can establish the elements of the § 8 defense and none of the circumstances in [MCL 333.26247(b)] exists, that defendant is entitled to the dismissal of criminal charges. [Id. at 403.]
In Kolanek, the Court stated that a defendant must raise a § 8 defense in a pretrial motion to dismiss. Id. at 410-411. However, the Court clarified in Bylsma, 493 Mich at 35-37, that a defendant who moves for dismissal under § 4 could still raise a § 8 defense before trial by filing a motion and showing a prima facie case regarding the elements of § 8. Thus, a defendant who moves to dismiss under § 4 is not precluded from raising a § 8 defense in a separate pretrial motion to dismiss. Id.
*615 Defendant did not reserve the right to raise a § 8 defense or otherwise preserve this issue for appeal. No evidentiary hearing was held, and no evidence concerning the requirements of § 8 was presented. Defendant had a trial, was not permitted to present any medical-marijuana defense, and was convicted. The question for this Court is whether this result is plain error affecting substantial rights. Carines, 460 Mich at 763-764. Defendant argues that he did not raise a § 8 defense because the law at that time required that the requirements of § 4 first be fulfilled. At the time of defendant’s trial in February 2012, the Michigan Supreme Court had already granted leave to appeal in King, specifically to consider whether the requirements of § 4 must be met to raise a § 8 defense. People v King, 489 Mich 957 (2011).
“[A] Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals.” MCR 7.215(C)(2). However, changes to a criminal law are generally given retrospective application to cases pending on appeal as of the date of the filing of the opinion containing the new rule. See People v Hampton, 384 Mich 669, 673-678; 187 NW2d 404 (1971). Defendant filed his claim of appeal on May 2, 2012. Kolanek was decided on May 31, 2012. We therefore conclude that defendant is entitled to the retrospective application of Kolanek.
The Kolanek Court noted that this Court’s interpretation of the MMMA in King rendered § 8 a nullity. Kolanek, 491 Mich at 402. Thus, because the state of the law at the time this case was pending rendered § 8 a nullity, and the state of the law changed during the pendency of defendant’s appeal, we conclude that defendant was deprived of a substantial defense and has demonstrated plain error. As stated, the language of the *616 MMMA allows defendant to assert “the medical purpose for using marihuana as a defense to any prosecution involving marihuana,” MCL 333.26428(a); thus defendant may attempt to assert this defense to his prosecution for possession with intent to deliver with respect to both the raw marijuana and the edible products containing THC that were found in his possession.[11]
In that regard, we note that, unlike with respect to § 4 immunity, the MMMA does not condition the availability of a § 8 affirmative defense on the possession of only a limited quantity of usable marijuana. Rather, a § 8 defense may be available without regard to whether the marijuana possessed was usable marijuana and without regard to the quantity possessed. Further, the considerations that caused the drafters of the MMMA to so condition the broader immunities afforded under § 4 may not exist in particular individual circumstances giving rise to the assertion of a § 8 affirmative defense. For example, if a particular qualifying patient suffers from a serious or debilitating medical condition (or symptoms thereof) and treatment or alleviation requires the medical use of marijuana, even in a form that consists of a mixture or preparation of THC extracted *617 from the resin of a marijuana plant (and thus would not qualify a patient or primary caregiver for § 4 immunity), then the patient or his or her primary caregiver may be entitled to assert a § 8 affirmative defense provided that it is demonstrated that the amount of marijuana possessed was not more than was reasonably necessary for the statutorily recognized purposes (and provided that the other conditions of § 8 were met). This is not to say that establishing a § 8 defense under such circumstances would be an easy task; to the contrary, we suspect that the bar to establishing a defense under those circumstances would indeed be a high one, and one that would become increasingly higher as the amount or potency of the marijuana possessed increases. That said, however, § 8 affords a qualifying patient or primary caregiver an opportunity to demonstrate the satisfaction of the statutory conditions for asserting the defense, even under those circumstances.
However, we conclude that the appropriate remedy is not to simply grant defendant a new trial. Rather, defendant is entitled to an evidentiary hearing to establish whether he is entitled to assert a § 8 defense. If, following an evidentiary hearing, no reasonable juror could conclude that a defendant has satisfied the elements of a § 8 defense, then the defendant is precluded from asserting the defense at trial. Kolanek, 491 Mich at 412. Before vacating defendant’s conviction and ordering a new trial, it would thus behoove this Court to know whether defendant would in fact be able to assert the defense at trial (or indeed is entitled to dismissal of the charges against him). We therefore remand this matter so that defendant may file a motion to dismiss the charges against him and for an evidentiary hearing to be held on the prima facie existence of the elements of a § 8 defense. If defendant cannot meet this burden, *618 his conviction will stand. Id. If defendant meets this burden without any question of fact, he will be entitled to dismissal of the marijuana possession charge. Id. If defendant establishes evidence of each element listed in § 8 but there are still material questions of fact, then he will be entitled to a new trial and the submission of this defense to the jury. See id.
VII. CONCLUSION
In light of the plain language of the MMMA, we conclude that the brownies possessed by defendant were not usable marijuana under the MMMA. Therefore, we further conclude (although under a different rationale than that of the trial court or that advanced on appeal) that the trial court did not err by denying defendant immunity from prosecution under § 4 of the MMMA. However, because the state of the law changed during the pendency of defendant’s appeal, he is entitled to move the trial court for dismissal and an evidentiary hearing on his ability to assert an affirmative defense under § 8 of the MMMA.
Vacated and remanded for further proceedings consistent with this opinion. We retain jurisdiction.
M. J. Kelly, EJ., and Murray, J. concurred with Boonstra, J.

 Although the statutory provisions at issue refer to “marihuana” and “usable marihuana,” “by convention this Court uses the more common spelling ‘marijuana’ in its opinions.” People v Jones, 301 Mich App 566, *594 _ n 1; _ NW2d _(2013). This opinion will thus refer to “marijuana” apart from direct quotation of statutory language and references to the full title of the MMMA.

 Defendant indisputably possessed 9.1 ounces of usable marijuana in the form of raw plant matter. Thus, if the aggregate weight of the brownies (54.9 ounces) were added to that amount, defendant would have been in possession of 64 ounces, considerably more than the 12.5 ounces he arguably was allowed to possess under the MMMA. MCL 333.26424(a) and (b)(1).

 The sugar cookies appear not to have been subjected to forensic testing and did not appear to have been part of the trial court’s weight calculation.

 We note that 69.08 grams is 2.44 ounces, slightly less than the per-patient allowable quantity of usable marijuana under § 4 of the MMMA.

 The chemist tested only one brownie seized from defendant; however, defendant does not argue that the other hrownies do not contain THC. Therefore, we will sometimes refer to “brownies” in the plural.

 We also note briefly that adoption of defendant’s position that the trial court should have relied on the quantities set forth on the labels that defendant placed on the brownies would be absurd; we find no support in our precedent for the notion that the amount of a controlled substance possessed should be established by a defendant’s self-report.

 The phrase “usable marihuana” in the MMMA thus refers to marijuana to which the law has granted a qualifying patient the power, right, or privilege to use, rather than merely referring to marijuana that is able to be ingested, smoked, or otherwise consumed in order to produce a narcotic effect. See, e.g., Blacks Law Dictionary (9th ed), p 1682 (indicating that “use” may mean “a benefit” conferred by the law); Random House Webster’s College Dictionary (2000) (indicating that “use” may mean “the power, right, or privilege of using something” and “usable” may mean “available .. . for use”).

 The chemist testified at the preliminary exam that the chemical testing revealed “whether or not a cannabinoid was present in the *607 sample” and farther stated that the analysis was “qualitative, whether or not the substance is present, not how much.” The chemist also agreed that the testing would not reveal the amount of THC present, but only indicates that there is “just enough that it’s detectable.”

 Defendant advances such an argument with respect to counting the entire weight of an edible product toward the quantity limit of § 4 of the MMMA. Although defendant formerly argued (at his preliminary examination) that edible products made with THC extract were not usable marijuana, we can now envision a possible argument to the effect that, because our endorsement of that position might result in the subjection of a possessor of those edible products to prosecution under our controlled substance possession statutes, that finding will similarly preclude ah medical use of marijuana by ingestion of edible products. We disagree, for the reasons noted.

 Our Supreme Court has noted that “§ 4 [of the MMMA] does not permit defendants to operate a business that facilitates patient-to-patient sales of marijuana..." Michigan v McQueen, 493 Mich 135, 158; 828 NW2d 644 (2013). However, in McQueen, our Supreme Court did not specifically state that the § 8 affirmative defense was unavailable for a defendant engaged in patient-to-patient sales of marijuana because the proceeding in that case was a public nuisance action, not a criminal proceeding. Id. at 158-159. The rationale of McQueen may indeed compel a determination that a defendant cannot establish the “medical purpose for using marihuana” required by MCL 333.26428(a) if that defendant possesses marijuana for the purpose of patient-to-patient sales, especially in light of People v Green, 494 Mich 865 (2013), rev’g 299 Mich App 313 (2013), in which our Supreme Court quoted McQueen with approval in reversing this Court’s affirmance of the trial court’s dismissal of charges (presumably under § 4 of the MMMA) against the defendant for delivery of marijuana. However, whether the § 8 defense is similarly unavailable for a defendant engaged in patient-to-patient sales is not currently before this Court.

 The prosecution argues that defendant explicitly waived his right to a § 8 defense. Defendant’s counsel did make statements at the preliminary examination to the effect that he was not seeking a § 8 defense. However, waiver is “the intentional relinquishment or abandonment of a known right.” People v Carter, 462 Mich 206, 216; 612 NW2d 144 (2000) (quotation marks and citations omitted) (emphasis added). Given the law at the time, we will not fault defendant for pursuing a § 4 defense before any § 8 defense; as noted, a defendant is not precluded from raising a § 8 defense in a separate pretrial motion. Bylsma, 493 Mich at 35-37. Once his § 4 motion was denied, as the law existed at the time, defendant would have had no reason to pursue a § 8 defense. Thus, we conclude that his failure to do so was not a waiver of that defense, nor were his counsel’s statements at the beginning of the proceedings against defendant.