*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MUHITH MAHMOOD,

        Plaintiff-Appellant,

V

CITY OF HAMTRAMCK and WAYNE COUNTY BOARD OF CANVASSERS,

        Defendants-Appellees,

and

ADAM ALHARBI,

        Intervening Defendant-Appellee.

UNPUBLISHED
March 27, 2026
8:34 AM

No. 378814
Wayne Circuit Court
LC No. 25-018688-CZ

Before: BORRELLO, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Plaintiff, Muhith Mahmood, appeals as of right the trial court's order denying his request for a writ of mandamus or, alternatively, injunctive relief. Plaintiff sought to compel the governmental defendants to count 37 absentee ballots. We find that the trial court erred by declining to grant a writ of mandamus. As a result, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The underlying facts are not disputed and are described by the trial court as follows:

> On November 4, 2025 the City of Hamtramck held an election for mayor and 3 City Council positions. Voters could vote by absentee ballot or in-person on election day. The candidates for mayor were Adam Alharbi and Muhith Mahmood. According to testimony of the Hamtramck City Clerk before the Wayne County Board of Canvassers, on November 4, the Hamtramck City Clerk delivered 990 sealed return envelopes containing absentee ballots to the 5 Absentee Voter

Counting Boards (AVCBs) (1 AVCB for each precinct), so that the AVCBs could open the envelopes and tabulate the ballots. On the evening of November 4, the AVCBs returned of [sic] the 990 return envelopes to the Clerk's office for secure storage as required by law. The Clerk, believing that all the envelopes were empty, stored them in her office. In the unofficial results for Mayor reported by the Clerk on Election Night, Alharbi received 2,009 votes and Mahmood received 1,998 votes.

On the day after the election, November 5, the Clerk, as required by law, sent all the election materials to the Wayne County Board of Canvassers for canvassing and declaration of the official results. On that same date, the Clerk also discovered that there was a 37-ballot discrepancy between the number of return envelopes delivered to the AVCBs and the number of ballots the AVCBs reported as tabulated.

The Clerk discovered that the cause of the discrepancy was that 37 ballots got overlooked and were never counted. Although the envelopes for the 37 ballots had been opened, the ballots were not removed and consequently not tabulated. Those envelopes were then comingled with envelopes of ballots that were properly tabulated. The Clerk placed the 37 ballots in a secure container, sealed it, and delivered it to the Board of Canvassers. The Clerk informed the Board of Canvassers that only certain election staff members had access to the ballots while they were stored in her office.

However, the City Clerk later learned that several individuals (none of whom were authorized election staff) had entered her office while the ballots were stored there. With this new information, the Clerk informed the Board that she could no longer vouch for the chain of custody and had to rescind her previous statement that only election officials had access to the Clerk's office. After hearing testimony from the Clerk, the Board declined to tabulate the 37 ballots. Plaintiff's challenger, Adam Alharbi, was certified as the winner of the election on November 18, 2025. A subsequent recount indicated that Alharbi won by 11 votes. On November 24, 2025, following certification of the election results and the recount, plaintiff filed a verified complaint for mandamus, declaratory judgment, and injunctive relief and a motion for writ of mandamus or, alternatively, preliminary injunction. Alharbi's subsequent motion to intervene as a party defendant was granted.

The trial court denied plaintiff's motion. The court focused its analysis on plaintiff's request for a writ of mandamus and the requirement of a clear legal duty. The court rejected plaintiff's argument that, with MCL 168.765a(4) providing a clear legal duty to tabulate the 37 votes, mandamus was an appropriate remedy. The court explained that this statutory provision allows for the tabulation of absentee ballots but only in accordance with applicable laws. And because the City Clerk could not confirm the integrity of the 37 ballots, MCL 168.823 afforded the Board of Canvassers with the discretion to decline to tabulate the ballots, which was fatal to the claim for a writ of mandamus.

The court also rejected plaintiff's argument that the 37 votes should be recast. The court noted that plaintiff failed to cite any authority from Michigan that would allow for such a remedy. The court also disagreed with plaintiff's position that the voters' constitutional rights to vote were

-2-

violated. The trial court recognized that statutory requirements are to be given full effect, even if it results in the disfranchisement of voters.

This appeal followed.[1]

## II. STANDARD OF REVIEW

A trial court's grant or denial of a writ of mandamus is reviewed for an abuse of discretion. *Sakorafos v Lyon Twp*, 349 Mich App 176, 185; 27 NW3d 329 (2023). "A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021). When a trial court makes an error of law, it also necessarily commits an abuse of its discretion. *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024). However, "[w]hether a defendant has a clear legal duty to act, which is required to warrant mandamus, is a question of law that this Court reviews de novo." *Sakorafos*, 349 Mich App at 185.

## III. MANDAMUS

> A writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ "has a clear legal right to the performance of the duty sought to be compelled," (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgment, and (4) no other legal or equitable remedy exists that might achieve the same result. [*Southfield Ed Ass'n v Bd of Ed of Southfield Pub Schs*, 320 Mich App 353, 378; 909 NW2d 1 (2017) (citation omitted).]

### A. CONST 1963, ART 2

Article 2 of Michigan's 1963 Constitution addresses elections in Michigan. In 2018, the people of this state voted to amend the Constitution, which amendments included adding the following language at Const 1963, art 2, § 4:

> (1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:

> (a) The right, once registered, to vote a secret ballot in all elections. [*Promote the Vote v Secretary of State*, 333 Mich App 93, 100-101; 958 NW2d 861 (2020).]

In 2022, the above language of § 4(1)(a) was modified to read: "The fundamental right to vote, including but not limited to the right, once registered, to vote a secret ballot in all elections." Additionally, the following language was added after that sentence: "No person shall . . . use any

---

[1] After appealing as of right, plaintiff moved in the Supreme Court for a bypass. The Supreme Court denied the request and ordered this Court to "expedite its consideration of this case." *In re Disenfranchised Hamtramck Voters*, ___ Mich ___ (January 15, 2026) (Docket No. 169465).

means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote." Const 1963, art 2, § 4(1)(a). While case law prior to 2022 supports the assertion that Michigan's higher courts have long recognized the right to vote as a fundamental right,[2] that fundamental right is now explicitly enshrined in Article 2 of Michigan's 1963 Constitution.

Under Const 1963, art 2, § 4(1)(a), "Any Michigan citizen or citizens shall have standing to bring an action for declaratory, injunctive, and/or monetary relief to enforce the rights created by this part (a) of subsection (4)(1) on behalf of themselves."

The Michigan Constitution also clarifies that it is the ministerial, clerical, and nondiscretionary duty of a board of canvassers to certify election results by including returns and corrected returns from absent voter counting boards.[3]

## B. MICHIGAN ELECTION LAW

We now turn to the statutory authority relevant to this matter, MCL 168.1, *et seq.* (the Michigan Election Law).

As plaintiff argues, MCL 168.765a(4) mandates the counting of absentee ballots:

> In a city or township that uses absent voter counting boards under this section, the absent voter ballots must be counted in the manner provided in this section and, except as otherwise provided in section 764d, absent voter ballots must not be delivered to the polling places.

The Legislature has made it clear that mistakes made by election officials must not result in the rejection of a ballot cast by an eligible voter unless the ballot is otherwise ineligible:

> A ballot cast by an eligible elector must not be rejected or otherwise not counted in a canvass, recount, or court order altering the certification of a canvassing board on the grounds that an election official failed to comply with a directive set forth in this act unless that ballot is otherwise ineligible under this act or federal law. [MCL 168.814].

---

[2] See, for example, *Grano v Ortisi*, 86 Mich App 482, 492; 272 NW2d 693 (1978), citing *Carter v Bullock*, 405 US 134; 92 S Ct 849; 31 L Ed 2d 92 (1972).

[3] Article 2, § 7(3) of Michigan's 1963 Constitution provides:

> It shall be the ministerial, clerical, and nondiscretionary duty of a board of canvassers, and each individual member thereof, to certify election results based solely on (1) certified statements of votes from counties; or (2) in the case of boards of canvassers, statements of returns from the precincts and absent voter counting boards in the county and any corrected returns.

With these statutory provisions in mind, we note that the facts of the present case are comparable to the facts of *Gracey v Grosse Pointe Farms Clerk*, 182 Mich App 193; 452 NW2d 471 (1989). In that decision, a judicial candidate's wife, Irene Gracey, delivered absentee ballots to the clerk's office on behalf of up to a maximum of 17 voters, in violation of Michigan law.[4] *Gracey*, 182 Mich App at 198. While the chain of custody of those 17 ballots was broken by Gracey's actions, there was no evidence indicating that she tampered with the ballots. As a result, this Court held that

> [m]erely showing that the ballots were picked up and delivered by Mrs. Gracey in violation of § 759b and Step 5 of the instructions in § 764a did not, by virtue of § 764b(4), necessarily invalidate those ballots, but merely subjected them to the challenged voter procedures of § 745. [*Id*. at 203.]

The *Gracey* Court further held that "[a] timely cast absentee voter ballot is not to be invalidated solely because the delivery to the clerk was not in compliance with § 764a or § 764b, although such ballot shall be deemed to be challenged and shall be marked and processed as provided in § 745." *Id*. at 209, citing MCL 768.764b(4).

As noted in *Gracey*, the Michigan Election Law contains procedures for challenging a ballot, which allow the ballot to be marked in such a manner that it can be identified in the event of a contested election while simultaneously keeping the name of the voter confidential:

> Whenever at any election the ballot of any person who has been challenged as an unqualified voter and who has taken the oath provided by law in such case to be taken shall be received by the inspectors of election, said inspectors shall cause to be plainly endorsed on said ballot, with pencil, before depositing the same in the ballot box, the number corresponding to the number placed after such voter's name on the poll lists without opening the same: Provided, That in case a ballot shall be so folded, defaced, printed or prepared that such number cannot be legibly and permanently written on the back thereof, said inspectors shall refuse to accept such ballot. [MCL 168.745.]

> To prevent the identification of said ballot, except as hereinafter provided for in case of a contested election, the inspectors of election shall cause to be securely attached to said ballot, with mucilage or other adhesive substance, a slip or piece of blank paper of the same color and appearance, as nearly as may be, as the paper of the ballot, in such manner as to cover and wholly conceal said endorsement but not to injure or deface the same; and if any inspector or other officer of an election shall afterward expose said endorsement or remove the said slip of paper covering the same, or attempt to identify the ballot of any voter, or

---

[4] Gracey's actions violated Michigan law because "she was not a 'member of the immediate family of the voter' within the degrees of consanguinity or legal relationship stated in step 5(c) of the instructions for absent voters set forth in § 764a of the Elections Law." *Gracey*, 182 Mich App at 198.

suffer the same to be done by any other person, he shall, on conviction thereof, be deemed guilty of a misdemeanor. [MCL 168.746.]

In case of a contested election, on the trial thereof before any court of competent jurisdiction, it shall be competent for either party to the cause to have produced in court the ballot boxes, ballots and poll books used at the election out of which the cause has arisen, and to introduce evidence proving or tending to prove that any person named on such poll lists was an unqualified voter at the election aforesaid, and that the ballot of such person was received. On such trial, the correspondence of the number endorsed on a ballot as herein provided with the number of the ballot placed opposite the name of any person on the poll lists shall be received as prima facie proof that such ballot was cast by such person: Provided, That the ballot of no person shall be inspected or identified under the provisions of this chapter unless such person shall consent thereto in writing, or unless such person has been convicted of falsely swearing in such ballot, or unless the fact that such person was an unqualified elector at the time of casting such ballot has been determined. [MCL 168.747.]

Pursuant to *Gracey*, evidence demonstrating that the ballots were stored in an unsecured room overnight in violation of the procedures of the Michigan Election Law did not necessarily invalidate those ballots, "but merely subjected them to the challenged voter procedures of § 745." *Gracey*, 182 Mich App at 203.

Returning to the present case, the trial court ultimately found that defendant had the discretion to decline to count the 37 ballots pursuant to MCL 168.823(3), which states as follows:

The board of county canvassers shall correct obvious mathematical errors in the tallies and returns. The board of county canvassers may, if necessary for a proper determination, summon the election inspectors before them, and require them to count any ballots that the election inspectors failed to count, to make correct returns in case, in the judgment of the board of county canvassers after examining the returns, poll lists, or tally sheets, the returns already made are incorrect or incomplete, and the board of county canvassers shall canvass the votes from the corrected returns. In the alternative to summoning the election inspectors before them, the board of county canvassers may designate staff members from the county clerk's office to count any ballots that the election inspectors failed to count, to make correct returns in case, in the judgment of the board of county canvassers after examining the returns, poll lists, or tally sheets, the returns already made are incorrect or incomplete, and the board of county canvassers shall canvass the votes from the corrected returns. [MCL 168.823(3).]

There is no dispute in this matter that the returns were incomplete. Amici curiae, American Civil Liberties Union Fund of Michigan, Promote the Vote Fund, and the League of Women Voters of Michigan Education Fund, argue that, pursuant to MCL 168.823(3), the Board of Canvassers was required to take one of the two actions mandated therein. The first option was that the board summon the election inspectors before them, require them to count any ballots that the election inspectors failed to count, to make correct returns, and canvass the votes from the corrected returns.

The alternative option was that the board designate staff members from the county clerk's office to count any ballots that the election inspectors failed to count, to make correct returns, and canvass the votes from the corrected returns. MCL 168.823(3) states that the board of county canvasser "may" take such actions in their "judgment," which language typically denotes *discretionary* conduct. See *Wilcoxon v City of Detroit Election Comm*, 301 Mich App 619, 631; 838 NW2d 183 (2013). However, amici essentially argue that, reading the statute as a whole, it is clear that the discretion granted to the board is to choose one of the two options, i.e., it may choose the first option or it may choose the alternative option.

Plaintiff argues that MCL 168.823 must be read in concert with the Michigan Constitution, the relevant case law, and the Michigan Election Law. We agree. Again, the Michigan Constitution states that "[n]o person shall . . . use any means whatsoever, any of which has the intent or effect of denying, abridging, interfering with, or unreasonably burdening the fundamental right to vote." Const 1963, art 2, § 4(1). Intervening defendant would have us ignore that provision and determine that the people who entered the office in which the ballots were stored, who were not elections officials, effectively denied 37 voters their fundamental right to vote.

When considering the mandates contained in Const 1963, art 2, § 4(1) and MCL 168.814, in light of the other constitutional rights described above, the Michigan Election Law, as well as the relevant case law, we find that the statutory mandate requiring the canvassing board to determine whether a ballot is ineligible under the law requires more than simply receiving testimony from the clerk indicating that several individuals who were not election officials entered the room where the ballots were stored. While there may be circumstances in which the law provides no remedy as it pertains to irregularity in an election, see *Hanlin v Saugatuck Twp*, 299 Mich App 233, 243-244; 829 NW2d 335 (2013), the present case does not present such a circumstance because the Michigan Election Law provides a process for these votes to be deemed to be challenged, marked, and processed pursuant to MCL 168.745. *Gracey*, 182 Mich App at 209.

Returning to *Southfield Ed Ass'n*, 320 Mich at 378, we find that plaintiff and the 37 voters who cast their ballots had a clear legal right to have them appropriately considered under the Michigan Election Law and defendant had a clear legal duty to perform the acts required by that law. The act of so marking the ballots as challenged pursuant to *Gracey* is ministerial and does not involve discretion or judgment. Finally, no other legal or equitable remedy exists that might achieve the same result. Thus, the trial court abused its discretion by failing to grant the writ of mandamus and failing to order the Board of Canvassers to have the 37 ballots subjected to the challenged voter procedures of MCL 168.745 as required by *Gracey*.

Because we have determined that the trial court erred by failing to grant mandamus relief for the reasons stated above, we need not address the other issues presented by plaintiff.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Randy J. Wallace