*In re* FILIBECK ESTATE

Docket No. 315107. Submitted May 13, 2014, at Marquette. Decided
June 5, 2014, at 9:00 a.m. Leave to appeal sought.

> Heidi J. Filibeck, as personal representative of the estate of her
> deceased husband Stephen R. Filibeck, brought an action in the
> Menominee Circuit Court, Family Division, against Laura J. Beal,
> Stephen Filibeck's daughter from a previous marriage, seeking to
> recover funds that Beal had helped raise to pay her father's
> medical bills when he was diagnosed with cancer shortly after
> losing his job and his health insurance. With Stephen Filibeck's
> approval, Beal had put these funds in a separate personal account
> in her own name with her sister, Lisa Filibeck, named as the
> beneficiary. Before his death, however, Stephen Filibeck's employ-
> ment was briefly reinstated so that he could retire with full
> medical benefits. As a result of this and of Beal's negotiations to
> have her father's medical bills reduced, most of the funds she had
> raised were not necessary to cover his medical costs. In accordance
> with her father's stated wishes and at his direction, she used some
> of the money to pay off her father's mortgage and other bills, then
> split the remainder between herself and her sister. The court,
> William A. Hupy, J., ruled that Stephen Filibeck did not have the
> power to give his daughters the money because it had been raised
> to help with his medical expenses and therefore was not his to give.
> The court imposed a constructive trust on the funds and ordered
> Beal to pay them to the estate. Beal appealed.
>
> The Court of Appeals *held*:
>
> 1. The court did not clearly err by finding that the funds at
> issue were donations raised for the specific purpose of covering
> Stephen Filibeck's medical treatments rather than profit derived
> from payments for goods or services. Although the form of the
> fundraising campaign resulted in some participants' receiving
> consideration in exchange for their money, the goods or services
> they received had been donated, and the participants intended for
> the money they gave to defray the decedent's medical costs.
> Accordingly, the trial court correctly imposed a constructive trust
> on the funds.

2. The trial court did not clearly err by finding that Stephen Filibeck had directed Beal to divide the funds between herself and her sister. However, the funds could not be considered a valid gift because the funds were not his to give and they had been neither actually nor constructively delivered.

Affirmed.

*Lynette L. Erickson* for Heidi J. Filibeck.

*Gerald Mason* for Laura Beal.

Before: BECKERING, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM. Laura J. Beal appeals by right the probate court's order that imposed a constructive trust on funds kept in her name that had been raised to pay the medical bills of decedent Stephen R. Filibeck and requiring her to pay those funds to the estate of Stephen J. Filibeck. We affirm.

For the most part, the facts in the instant matter are undisputed. Stephen R. Filibeck had been employed by the state of Michigan, but was laid off as a result of budget cuts and lost his health insurance, among other things, as a result. Several months later, he was diagnosed with cancer, which would require extensive and expensive medical treatment. Laura J. Beal, one of Stephen's daughters from a prior marriage, spearheaded a fundraising campaign for the purpose of defraying Stephen's medical expenses. The campaign largely consisted of a benefit dinner that, through the efforts of Laura and numerous other people, raised approximately $45,000, which was deposited in an account in Laura's name. However, Stephen later regained his health benefits when he was reclassified as a retiree. Stephen directed that a sum of money from the fund be used to pay off his mortgage, and some other

funds were withdrawn on an as-needed basis for various unchallenged purposes. Upon Stephen's death, approximately $30,000 remained in the account.

Stephen died intestate, survived by his wife, Heidi J. Filibeck, who is the personal representative of his estate; Laura; and his other child from the former marriage, Lisa Filibeck. According to Laura, shortly before his death, Stephen directed that the approximately $30,000 remaining in the account be divided equally between Laura and Lisa. Laura's theory was that she raised the funds, so they should belong to her, and in any event, Stephen had given the money to his daughters during his lifetime. Heidi contends that the money remaining in the account properly belonged in Stephen's estate, and further notes that some medical expenses remained outstanding and unpaid by Stephen's insurance. Heidi's theory was that the donations were meant to help with decedent's medical and other bills, and were not for the daughters' personal use. Some testimonial evidence supported the factual underpinnings for both parties' positions. The trial court concluded that although Stephen had in fact instructed Laura to divide the funds between herself and Lisa, Stephen had no power to do so because he was not the owner of the funds at the time; therefore, the court imposed a constructive trust on the funds because they were donated for the purpose of Stephen's medical treatment.

A constructive trust is an equitable remedy created not by intent or by agreement, but by the operation of law. *In re Swantek Estate*, 172 Mich App 509, 517; 432 NW2d 307 (1988). The imposition of a constructive trust " 'makes the holder of legal title the trustee for the benefit of another who in good conscience is entitled to the beneficial interest.' " *Id.*, quoting *Arndt v Vos*, 83

Mich App 484, 487; 268 NW2d 693 (1978). A constructive trust may be imposed when "necessary to do equity or to prevent unjust enrichment[.]" *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 188, 504 NW2d 635 (1993) (citations and quotation marks omitted). This Court reviews equitable decisions of the probate court de novo, but overturns any underlying factual findings only upon a finding of clear error. *In re Temple Marital Trust*, 278 Mich App 122, 141-142; 748 NW2d 265 (2008). The Court is also mindful that equity is a matter of grace and discretion applied to the particular circumstances of each particular case. *Youngs v West*, 317 Mich 538, 545; 27 NW2d 88 (1947).

We see no clear error in the trial court's finding that the funds at issue were raised for the purpose of covering Stephen's medical treatments, rather than more generally for whatever Stephen might wish. Furthermore, there is no clear error in finding that the funds were donated rather than, as Laura contends on appeal, essentially profit derived from payments for goods or services. Although the form of the fundraising campaign did indeed involve some of the participants receiving some kind of consideration in exchange for their monies, the testimony unambiguously shows that the "consideration" was itself donated and that the form was merely an entertaining pretext. The Court takes notice that such fundraising campaigns—raffling off donated goods or services, charging to partake of donated food and drink, and the like—are common, and it is well established that courts look to the substance of things rather than superficialities. There is no doubt in the record that the money that ended up in the fund came to be there because the people who parted with the money intended to make donations for the purpose of defraying Stephen's medical costs. Furthermore,

although it is undisputed that Laura spearheaded the effort and expended considerable personal resources in doing so, the record does not show her to have done so singlehandedly.

The instant case is in many ways similar to *Babcock v Fisk*, 327 Mich 72; 41 NW2d 479 (1950). In that case, a four-year-old girl lost both arms in a terrible accident, whereupon "a number of sympathetic people" undertook to raise funds for her needs, an effort that ultimately raised significantly more than the girl needed. *Id.* at 75. The fundraisers formed a committee to determine how to administer the funds; however, the girl's father disagreed with the committee's proposal and sought possession of the money as her guardian. *Id.* at 75-76. Although in that case an explicit trust was formed, our Supreme Court nevertheless considered the intent of the donors to be dispositive; if they intended the money to be an outright gift, it would belong to the girl, but if they intended the money to be used on her behalf, it would belong to the trust. *Id.* at 77-78. "Determination of this issue, under the circumstances and conditions attending the instant case, should be made primarily in the light of that which motivated the contributors, rather than what might have been the concept, desire or thought of some of the solicitors, or of those indirectly beneficially interested in the contributions." *Id.* at 79. The Court found it "quite inconceivable that the donors designed a direct and absolute gift of so large a sum of money to a 5-year-old girl, without contemplating that some plan for the preservation, control and use of the fund would be adopted; and that the perfecting of such a plan would be accomplished by those who solicited the contributions." *Id.* at 82.

As in *Babcock*, the donors of the funds at issue unambiguously did not intend to make them an outright gift. Rather, they were intended for a particular purpose, and the necessary implication is that those funds would in some way be administered to effectuate that purpose. Although no explicit trust was set up here, we conclude that the unavoidable consequence of the circumstances is the same: that "the solicitors of the fund here involved acted as agents of the donors" and as a consequence they "now occupy the position of trustees[.]" *Babcock*, 327 Mich at 83. We agree with the trial court that equity compels the same result here: the money Laura received was not for her benefit. Although the money was kept in her name, apparently with Stephen's approval, the trial court correctly concluded that her role was essentially that of a fiduciary, and so the trial court did not err by imposing a constructive trust on the funds.

Nonetheless, also as in *Babcock*, the funds raised for the beneficiary's needs ultimately turned out to vastly exceed what was necessary to carry out that purpose, which raises the question as to what, under the circumstances of this case, is the scope of the trustees' duties. *Babcock*, 327 Mich at 83. Again, we see no clear error in the trial court's finding that Stephen actually directed Laura to divide the funds between herself and Lisa. However, Stephen was not the owner of the funds and could not make a gift thereof. Additionally, Laura argues that the only possible beneficiary of the constructive trust must be Stephen, and it does not appear entirely proper to frustrate his expressed wishes.[1] She

---

[1] We recognize Laura's argument that expending a portion of the fund toward Stephen's mortgage may not have been in keeping with the intended purpose of the fund. However, although Heidi may have incidentally benefited because she lived in the residence, paying off Stephen's mortgage was to his benefit and did involve paying a bill, albeit

notes further that Stephen was an adult, whereas the beneficiary of the trust in *Babcock* was a child.

However, Laura's own testimony shows that even she did not believe the money in the account was Stephen's to use in any way he wished. She withdrew the funds from the account a few days before Stephen's death, when it was apparent that he would not live much longer, but she indicated that had Stephen miraculously survived, the money would have remained intended for his benefit. Furthermore, although the testimony is not entirely clear, it appears that Stephen did not direct that Laura immediately consider the money to be hers and her sister's, but rather that they should keep the remainder at some undefined point in the future.

In any event, a gift, whether *inter vivos* or *causa mortis*, requires not only intent to convey something and acceptance by the intended recipient, but also delivery or at least written instructions to make a delivery. See *Osius v Dingell*, 375 Mich 605, 611; 134 NW2d 657 (1965); *Lumberg v Commonwealth Bank*, 295 Mich 566, 568; 295 NW 266 (1940). Gifts *causa mortis* may even be upheld on a constructive trust theory as long as *some* kind of delivery or written instruction has been made. See *In re Freedland Estate*, 38 Mich App 592, 607-608; 197 NW2d 143 (1972). The trial court found the requisite intent, and Laura's actions prove acceptance. Unfortunately, Stephen left no written instruction to that effect and there is no evidence that Stephen made any kind of delivery, not even an arguable constructive delivery. That being the case, we must conclude that there was no valid gift. Laura, as constructive trustee of the funds and there-

not a medical one. Consequently, we are not persuaded that it falls into the same class of ultra vires acts as a trustee's paying out a portion of a trust to him- or herself.

fore a fiduciary, could not simply pay the remainder of the trust to herself under the circumstances.

We therefore affirm the trial court. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

BECKERING, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ., concurred.