*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACK W. SWANSON, and all others similarly situated,

UNPUBLISHED
May 26, 2022

        Plaintiff-Appellant,

v

No. 357711
Court of Claims
LC No. 21-000083-MZ

STATE OF MICHIGAN and DEPARTMENT OF STATE,

        Defendants-Appellees.

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the Court of Claim's order granting summary disposition in defendants' favor and dismissing plaintiff's complaint. We affirm.

In April 2021, plaintiff filed a verified class action complaint against defendants concerning late fees assessed by the Michigan Secretary of State (SOS). Plaintiff asserted that he bought a motorcycle during the COVID-19 pandemic ("the pandemic"), and, as he was required to do under MCL 257.234, sought to register the motorcycle with the SOS within 15 days of his purchase in order to obtain a new certificate of title in his name. According to plaintiff, due to pandemic safety measures, the SOS had limited access to its offices to appointments only and that appointments were often not available for weeks or months at a time. Plaintiff asserted that he tried to make an appointment with several different SOS branches within the requisite 15-day period, but no appointments were available. Plaintiff asserted that it was difficult to impossible to obtain an appointment to transfer vehicle titles within the 15-day statutory period and that he and others similarly situated were charged the $15.00 late fee set forth in MCL 257.234(3) for failing to transfer the title within the 15 days. Plaintiff thus brought the proposed class action lawsuit on behalf of himself and all others similarly situated, seeking a constructive trust to correct the alleged inequity, and claiming an as-applied substantive due process violation (Art 1, Section 17 of Michigan Constitution of 1963).

-1-

With their answer and affirmative defenses, defendants filed a motion to dismiss the complaint. Defendants first asserted that the Court of Claims lacked jurisdiction over plaintiff's case. Defendants also asserted that because constructive trusts require fraud as an essential element and the imposition of the statutory late fee is not fraudulent, plaintiff's constructive trust claim failed. They asserted that plaintiff's claim of a due process violation also failed. Defendants further pointed out that during the pandemic, public acts went into effect which prohibited late fees on certain transactions, including title transfers. According to defendants, there was only a small window of time where the late fee on title transfers was in effect during the pandemic and plaintiff titled his motorcycle within the small window of time. Defendants asserted, however, that the SOS provided vehicle owners with a remedy for the statutorily imposed late fees: vehicle owners that were assessed a late fee could request a refund from the SOS. It is undisputed that plaintiff did not request a refund of the late fee.

Plaintiff thereafter moved for class certification, but on June 22, 2021, the Court of Claims entered an opinion and order granting defendant's motion to dismiss, thus rendering all other outstanding motions moot. The court first determined that it had jurisdiction over plaintiff's claims. That being said, the court agreed that the availability of a refund of the late fee obviated the need for the imposition of a constructive trust and it therefore dismissed plaintiff's claim for the same. With respect to plaintiff's due process claim, the court noted that plaintiff did not establish the "impossibility" of obtaining an appointment within 15 days of his purchase and, more importantly, the availability of a refund for the fee defeated an assertion that the statute at issue had been applied in an arbitrary manner. Plaintiff and others like him had the ability to avoid the fee and, if they were unable to do so, could nevertheless obtain a refund of the late fee simply by asking for one. The court thus dismissed plaintiff's complaint under MCR 2.116(C)(10). This appeal followed.

> "Appellate review of the grant or denial of a summary-disposition motion is de novo, and the court views the evidence in the light most favorable to the party opposing the motion. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." [*West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (internal citation omitted)].

"The proper interpretation and application of a court rule is a question of law, which we review de novo." *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). With respect to class certification decisions, where a party challenges a trial court's factual findings, a review for clear error is appropriate, and where a party challenges a trial court's exercise of discretion, a review for abuse of discretion is appropriate. *Id*.

"Class action litigation in Michigan is governed by the Michigan Court Rules, and MCR 3.501(A)(1) specifically sets forth the prerequisites for class certification." *Id*. at 488. MCR 3.501 states, in relevant part:

(A) Nature of Class Action.

(1) One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:

> (a) the class is so numerous that joinder of all members is impracticable;

> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and

> (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

The party seeking class certification bears the burden of establishing each of the five prerequisites set forth in MCR 3.501(A)(1), which are commonly referred to as numerosity, commonality, typicality, adequacy, and superiority. *Dow Chemical Co*, 484 Mich at 488, 500.

Plaintiff in this matter sought class certification for himself and persons purportedly like himself that were unable to access a SOS branch office in order to transfer title to a vehicle within the statutorily required time period. That time period is set forth in MCL 257.234:

> (1) The purchaser or transferee, unless the person is a licensed dealer, shall present or cause to be presented the certificate of title and registration certificate if plates are being transferred to another vehicle, assigned as provided in this act, to the secretary of state accompanied by the fees as provided by law, whereupon a new certificate of title and registration certificate shall be issued to the assignee. The certificate of title shall be mailed or delivered to the owner or another person the owner may direct in a separate instrument in a form the secretary of state shall prescribe.

> ***

> (3) Unless the transfer is made and the fee paid within 15 days, the vehicle is considered to be without registration, the secretary of state may repossess the license plates, and transfer of the vehicle ownership may be effected and a valid registration acquired thereafter only upon payment of a transfer fee of $15.00 in addition to the fee provided for in section 806.1

Addressing plaintiff's claim for a constructive trust, we note that, "[a] constructive trust is an equitable remedy created not by intent or by agreement, but by the operation of law" and may be imposed when necessary for equity's sake or to prevent unjust enrichment. *In re Filibeck Estate*, 305 Mich App 550, 552–53; 853 NW2d 448 (2014). Thus, "such a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, undue influence,

-3-

duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co, Inc v E China Tp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993) (internal quotation marks and citations omitted).

Plaintiff has not alleged that the late fee at issue was obtained through fraud, misrepresentation, concealment, undue influence, duress or taking advantage of one's weakness. He has also provided no authority for the suggestion that the SOS itself created the difficulty of making appointments within the 15-day window. Indeed, during certain months of the pandemic, the vast majority of public and private businesses in Michigan were completely closed, and not of their own volition. Nevertheless, plaintiff asserts that it is inequitable for the Secretary of State to retain his, and others similarly situated, $15.00 late fee. We disagree.

First, the SOS is not required to impose the $15.00 late fee. MCL 257.234(3) explicitly provides that the Secretary of State *may* take certain actions if the vehicle title is not transferred within 15 days, including the imposition of the late fee. "The Legislature's use of the term . . . 'may' denotes permissive action." *Wilcoxon v City of Detroit Election Com'n*, 301 Mich App 619, 631; 838 NW2d 183 (2013). Plaintiff has provided no authority indicating that the late fee is illegal, unconstitutional, or otherwise unsound.

Second, the evidence indicates that plaintiff purchased his motorcycle on July 9, 2020. He asserted in his complaint that he sought to register the motorcycle with the SOS "immediately thereafter." He further asserted that he was unable to obtain an appointment within the 15-day period. However, in response to defendants' motion to dismiss, plaintiff provided no evidence concerning his asserted attempts and failures to obtain an appointment. Instead, plaintiff provided evidence that his counsel attempted to access the SOS appointment system in April 2021 and was unable to obtain an appointment until August 2021. While attempts on that specific date may have encountered problems or lack immediate availability, indeed even if many or most days encountered long wait times until available appointments, that does not *necessarily* mean that plaintiff was unable to obtain an appointment at any SOS branch at any and all times within 15 days of his motorcycle purchase date.

Plaintiff also provided the affidavit of his counsel, wherein counsel indicated that his wife was unable to obtain an appointment with the SOS for "months" after buying a camper and that she was charged a late fee for failing to transfer tittle to the camper within 15 days, even when such late fees were purportedly waived during the title transfer period. Plaintiff also attached newspaper opinion articles that indicated obtaining appointments with the SOS during the pandemic was difficult. However, in one of the articles, while a reporter was unable to get a same day appointment at three different SOS branches for a specific day, another person indicated that he was easily able to obtain a same-day appointment. Finally, plaintiff attached a printout showing that on April 23, 2021, appointments were not available for a specific SOS branch until July 2021, and a printout showing that when attempting to access the SOS website on June 1, 2021, he (or counsel) received a "couldn't load page" message.

While the above is certainly evidence that the SOS appointment website periodically had loading problems, and that appointments were difficult to obtain, that still does not mean that appointments were completely unavailable at all branches on all dates that could be relevant to the

potential class. Plaintiff, for example, transferred his title on October 12, 2020. He has not provided evidence that he made significant attempts to get an appointment at any and all available SOS branches (within reason) within 15 days of his July 9, 2020 purchase date. The fact that the SOS devoted several hours per day exclusively to same and next day appointments[1] and that most same and next day appointments apparently filled up quickly actually shows that people *were* able to get same and next day appointments.

Next, waiting to transfer a title past the 15 days and the resulting imposition of the late fee is not new or novel. Defendants provided the affidavit of William James Fackler II, director of the office of program support for the SOS to support their position. Fackler swore that he has access to data regarding late fees imposed under MCL 257.234(3).[2] Fackler swore that between March 1, 2019 and February 29, 2020, there were 65,605 late fees imposed on private party sales where the title to a vehicle was not transferred within 15 days. Of those, 1,765 transfers were made more than 1,000 days after purchase and 18,725 transfers were made between 100 and 999 days after purchase. Thus, while plaintiff asserts that the limited access to SOS offices during the pandemic prevented *him* from transferring the title of his vehicle within 15 days, it would be difficult to verify which persons of the purported class fell into the same category as plaintiff or instead simply did not transfer the title within 15 days for whatever reason, as 65,605 people did in the year prior to the pandemic.

Finally, and most importantly, defendants provided the affidavit of Gina Feguer,[3] assistant director of the office of financial services for the SOS, who swore that persons who purchased a vehicle on or after March 1, 2020 and were assessed a late fee were eligible to receive a refund of that late fee. According to Feguer, a person assessed the late fee could submit SOS Form A-226 or call the refund unit of the SOS to request a refund. Feguer swore that plaintiff would be eligible for a refund of his $15.00 late fee if he submitted the form.

Consistent with Feguer's affidavit, Form A-226, which can be accessed at https://www.michigan.gov/documents/a-226_18955_7.pdf, allows for a person to request a "title refund." While there are no explicit instructions with the form, and the form does not specifically state that one could seek a refund of a title transfer late fee, the form does contain a space for requesting a "title refund" and to provide an explanation for the request. There is no indication that plaintiff was prevented from checking the box for "title refund" on the form and explaining that he was requesting the refund of a late fee associated with a title transfer. According to Feguer,

---

[1] According to the SOS website, appointments can be made up to six months in advance, but certain hours each day are reserved strictly for customers to book one day in advance. https://www.michigan.gov/sos/0,4670,7-127--561580--,00.html.

[2] The affidavit actually states "MCL 258.234(3)" which we presume is a typographical error.

[3] Plaintiff asserts that the affidavit was unsigned. When initially submitted, the affidavit was in fact signed, but not notarized, and contained a footnote indicating that a notarized copy "will be forthcoming." A notarized copy of the affidavit was filed with defendants' reply to plaintiff's response to their motion to dismiss.

such late fees were, in fact, refundable on request and plaintiff has provided no evidence to refute Feguer's sworn statements.

Plaintiff has not claimed he attempted to receive a refund of the fee. He faults the SOS for not making the availability of the refund more well-known. He also cites to *Campbell-Ewald Co v Gomez*, 577 US 153; 136 S Ct 663; 193 L Ed 2d 571 (2016), as revised (Feb 9, 2016) for the proposition that "a class action lawsuit cannot be dismissed by an actual payment—much less only the potential opportunity of a payment—by the defendant(s) to a proposed class representative." However, that case involved a defendant who, prior to the deadline to file a motion for class certification, proposed to settle the named plaintiff's individual complaint and filed an offer of judgment pursuant to the Federal Rules of Civil Procedure. There has been no offer of settlement in this case. Rather, defendants simply point out that plaintiff has and always had the available remedy of seeking a refund of his late fee, as did and do all others in his position.

We agree with the Court of Claims that the availability of a refund of the $15.00 late fee renders the need for a constructive trust unnecessary. Plaintiff has provided no real argument or authority for his apparent positions that: the SOS is at fault for the lack of appointment availability; that he attempted to get appointments every day of the 15-day period after he purchased his motorcycle; that the SOS was required to waive the late fees; that the fee imposed was unreasonable, illegal, or unconscionable, or; that he could not attempt to obtain a refund of the fee. It is not unconscionable or inequitable for the SOS to collect a fee it is statutorily permitted to impose and would refund upon request. There being no inequity, there is no need for a constructive trust.

Plaintiff next contends that the Court of Claims "weighed the briefing" rather than the admissible evidence in granting defendants' motion for summary disposition on the substantive due process claim. We review decisions on motions for summary disposition brought under MCR 2.116(C)(10) de novo, viewing the evidence in a light most favorable to the non-moving party. *West*, 469 Mich at 183. This dispute also concerns the constitutionality of the statutorily permitted late fee, which we review de novo. *Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014).

The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., Am. XIV, § 1. "[D]espite the clause's reference to process, the United States Supreme Court has interpreted this clause to guarantee more than fair process, and to cover a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them. *Mettler Walloon, LLC v Melrose Tp*, 281 Mich App 184, 197; 761 NW2d 293 (2008) (quotation marks and citations omitted). Thus, there are two types of due process: procedural and substantive. *In re Beck*, 287 Mich App 400, 401; 788 NW2d 697 (2010). Plaintiff claimed only a substantive due process violation in this matter. "The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests." *Id*. at 402.

Due process does not guarantee against incorrect or questionable governmental decisions. *Mettler Walloon*, 281 Mich App at 206. Instead, as this Court quoted approvingly:

We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v McDonnell*, 418 US 539, 558; [94 S Ct 2963; 41 L Ed 2d 935] (1974), whether the fault lies in a denial of fundamental procedural fairness, see, *e.g., Fuentes v Shevin*, 407 US 67, 82; [92 S Ct 1983; 32 L Ed 2d 556] (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, *e.g.*, *Daniels v Williams*, 474 US [327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986) ] (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). [*Mettler Walloon*, 281 Mich App at 198]

"The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power." *Cummins v Robinson Twp*, 283 Mich App 677, 701; 770 NW2d 421 (2009), quoting *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998). "While due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Mettler Walloon*, 281 Mich App at 198 (quotation marks and internal citations omitted).

In this case, plaintiff does not contend below, and does not maintain on appeal, that the statute permitting the late fee itself, *i.e.*, a legislative act of the government, violated his substantive due process rights. Instead, he appears to argue that the SOS's enforcement of the statute violated his substantive due process rights because the SOS made it impossible to avoid the late fee during the pandemic. As such, plaintiff appears to be challenging, in effect, an action of the SOS in applying the statute during the pandemic, making the question whether there was egregious or arbitrary governmental conduct. *Mettler Walloon*, 281 Mich App at 197. "[W]hen executive action is challenged in a substantive due process claim, the claimant must show that the action was so arbitrary (in the constitutional sense) as to shock the conscience." *Id.* at 197, 200.

Plaintiff claims the Court of Claims held that defendant's brief, not any evidence, cast doubt on plaintiff's claim. However, the court specifically stated in its opinion and order that, "the evidence of record defeats plaintiff's assertions that there is an arbitrary deprivation of property." Plaintiff also asserts that defendants attached no relevant evidence to their motion. However, as we indicated when considering plaintiff's constructive trust claim, defendants attached two unrefuted affidavits and a relevant form to their motion.

As also previously addressed, plaintiff provided evidence that the SOS appointment system had trouble loading on a specific date counsel tried to make an appointment in June 2021 and provided articles showing that people were frustrated with having to wait for appointments and the limited availability of such appointments. Viewing the evidence in a light most favorable to plaintiff, however, plaintiff has established nothing more than that there were difficulties on the specific dates for which he attached documentary proof. Plaintiff provided no documentary evidence of appointment attempts or lack of appointment availability from the date he purchased his motorcycle, July 9, 2020, through the following 15-day window.

Moreover, plaintiff misses the point that a substantive due process claim requires a showing that there has been an *arbitrary* deprivation of liberty or property interests, i.e., an action so

arbitrary as to shock the conscience. *Beck*, 287 Mich App at 402. There is nothing arbitrary or shocking about the SOS collecting a statutorily permitted late fee that has been in existence in MCL 257.234 since that statute was enacted in 1987. There is also nothing shocking about the SOS moving to an appointment-only system for purposes of public health and safety during a pandemic. And there is nothing shocking about the SOS having difficulty accommodating every person with their preferred specific appointment date or specific appointment time during its limited availability. The system put into place allowed for plaintiff, and anyone in his similar position, to call or attempt to make an online appointment twice per day, every day, for daily hours exclusively reserved for same and next day appointments. It was not the SOS that made it "impossible," according to plaintiff, for him to get an appointment to transfer the title to his motorcycle within 15 days; it was *other people who also* wanted appointments within that 15-day window. That plaintiff, and others, were not successful in obtaining certain sought appointments does not render the imposition of the late fee arbitrary. And, as previously indicated, that same and next-day appointments were routinely filled very quickly supports the finding that obtaining such appointments was not, as claimed by plaintiff "an impossibility." Clearly, many people obtained same and next day appointments.

In short, there is no deprivation of property without due process where all persons are simply required to comply with a title transfer deadline set forth in a statute or face a minimal late fee and some, but not all, were unsuccessful in complying with the title transfer deadline. Finally, the application of the late fee, as permitted by statute cannot be found to be arbitrary or conscience-shocking when plaintiff (and all others similarly situated) did and presumably still does, have the opportunity to request and obtain a refund of the $15.00 late fee. The Court of Claims thus did not err in finding that there were no questions of material fact with respect to plaintiff's claims and that defendants were entitled to summary disposition in their favor.

Affirmed. Defendants being the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

-8-