*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEORA BAR-LEVAV, also known as LEORA
BAR, also known as LEORA LEVAV,

      Plaintiff/Counterdefendant-Appellee,

v

RAN BACHAR,

      Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
March 2, 2023

No. 360077
Oakland Circuit Court
LC No. 2020-178818-CH

Before: RICK, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant, Ran Bachar, appeals as of right the trial court's judgment, entered after a bench trial, in favor of plaintiff, Leora Bar-Levav. The court imposed a constructive trust on defendant's one-half interest in real property and ordered defendant to execute a quitclaim deed conveying his undivided one-half interest in the property to plaintiff. The court also dismissed defendant's counterclaim for partition. We affirm.

## I. BACKGROUND

This case arises out of a dispute over real property located on Farmbrook Road in Southfield, Michigan. The parties, who were involved in a serious romantic relationship, purchased the property with the intent to build a home. Plaintiff provided the funds to purchase the property and intended to have the property titled solely in her name. After some discussion about defendant acting as a general contractor and doing some of the construction work for the home himself, plaintiff agreed to add defendant's name to the deed. A little more than a year later, the parties ended their relationship, without the house being built. When defendant refused to sign a quitclaim deed conveying his interest in the property to plaintiff, plaintiff filed this action, asserting claims for breach of contract, constructive trust, unjust enrichment, and quiet title. Defendant filed a counterclaim for partition. At trial, plaintiff withdrew her claims for breach of contract and quiet title.

The trial court found that plaintiff sustained her burden of establishing that a constructive trust was necessary to prevent defendant from being unjustly enriched. Accordingly, the court

imposed a constructive trust on defendant's one-half interest in the property in favor of plaintiff and ordered defendant to convey his interest in the property to plaintiff. On appeal, defendant challenges the trial court's imposition of a constructive trust and the court's denial of his claim for partition. He also argues that the trial court made numerous erroneous factual findings and that the number of erroneous findings demonstrates judicial bias against defendant.

## II. STANDARDS OF REVIEW

The trial court's findings of fact following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo, *Ladd v Motor City Plastics Co*, 303 Mich App 83, 93; 842 NW2d 388 (2013), including "whether the trial court properly applied equitable principles," *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (citation and quotation omitted).

Generally, to preserve a claim of judicial bias, a party must make a motion in the trial court to disqualify the judge under MCR 2.003. See *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). In this case, defendant's claim of judicial bias is related to the trial court's factual findings after a bench trial, a claim that would not have been apparent until the court issued its written opinion and order. Nevertheless, defendant did not preserve the claim by moving for a new trial or otherwise raising it in the trial court. We review this unpreserved claim of error for plain error affecting substantial rights. See *Duray Dev, LLC v Perrin,* 288 Mich App 143, 150; 792 NW2d 749 (2010). Plain error affects a party's substantial rights if the party is prejudiced by the error, meaning that the error affected the outcome of the lower court proceedings. *Id*.

## III. CONSTRUCTIVE TRUST

"A constructive trust is an equitable remedy created not by intent or by agreement, but by the operation of law." *In re Filibeck Estate*, 305 Mich App 550, 552; 853 NW2d 448 (2014) (citation omitted). A court imposes a constructive trust when equity is necessary or to prevent unjust enrichment. *Id*. at 553. In *Kammer Asphalt Paving Co v E China Twp Sch*, 443 Mich 176; 504 NW2d 635 (1993), our Supreme Court explained:

> A constructive trust may be imposed "where such trust is necessary to do equity or to prevent unjust enrichment. . . ." Hence, such a trust may be imposed when property " 'has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . .' " Accordingly, it may not be imposed upon parties "who have in no way contributed to the reasons for imposing a constructive trust." The burden of proof is upon the person seeking the imposition of such a trust. [*Id.* at 188 (citations omitted).]

Defendant argues that allowing him to retain his interest in the property would not be unconscionable because there was no evidence of fraud, misrepresentation, concealment, undue

influence, duress, or any other similar circumstances. However, in *Kent v Klein*, 352 Mich 652; 91 NW2d 11 (1958), our Michigan Supreme Court stated:

> Fraud in the inception we do not require, nor deceit, nor chicanery in any of its valied guises, for it is not necessary that property be wrongfully acquired. It is enough that it be unconscionably withheld. Nor is it necessary, to move the chancellor's conscience, that plaintiffs have suffered a loss, although in most cases there is both a loss to the plaintiffs and a like gain to the defendant. [*Id*. at 657 (citations omitted.)]

Thus, plaintiff was not required to prove fraud, misrepresentation, concealment, undue influence, duress, or a loss in order to carry her burden of proof for a constructive trust. Rather, plaintiff had to prove that it was unjust or unconscionable for defendant to retain legal title to the property. *Kent*, 352 Mich at 657-658.

Although defendant recognizes that a constructive trust may be a remedy for unjust enrichment, defendant argues that he was not unjustly enriched by plaintiff's adding of his name to the deed. "Unjust enrichment is a cause of action to correct a defendant's retention of a benefit owed to another." *Genesee Co Drain Comm'r v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). In order to establish a claim of unjust enrichment, a plaintiff must establish the receipt of a benefit by the other party from the plaintiff and an inequity resulting to the plaintiff because of the retention of the benefit by the other party. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). Unjust enrichment claims based in equity can be remedied by the establishment of a constructive trust. See *Genesee Co Drain Comm'r,* 504 Mich at 421.

Plaintiff clearly demonstrated that defendant received a benefit from plaintiff when she added his name to the deed without his contributing any funds toward the purchase price. *Karaus*, 300 Mich App at 23-24. The question is whether an inequity would result if defendant were allowed to retain his interest in the property. The evidence demonstrated that plaintiff allowed defendant's name to be placed on the deed because he agreed to contribute his time and labor toward building a house on the property. It is undisputed that defendant failed to build a house on the property as contemplated by the parties. The trial court properly could find from this evidence that it would be inequitable to allow defendant to retain an interest in the property where he did not perform the task that was the basis for granting him a shared interest in the property in the first instance.

Defendant argues that even though the home that the parties contemplated was never built on the property, it would not be unjust to allow him to retain his interest in the property because he made considerable contributions in the amount of $37,113.49 toward satisfying the parties' agreement. He argues that the trial court erred by finding that these contributions held no current value for the property. Defendant presented an itemized list of expenditures he made toward the property. Two of the expenditures, totaling $22,429.32, were items that remained in defendant's possession, namely: (1) a tractor and related parts, and (2) flooring. Defendant installed 2,000 square feet of the 6,000 square feet of flooring in his White Lake home. Because $22,429.32 of defendant's claimed expenses were for items still in his possession, which he testified he could sell, the trial court did not clearly err by determining that these expenditures did not hold any current value for the property or provide a benefit to plaintiff.

Defendant said that he paid Kieft Engineering $4,882 for a property and tree survey and for the final site plan to be submitted to the city to obtain the building permit. Kieft's owner and land surveyor, Timothy Hart, testified that, in general, the property survey was valid for about 90 days. After 90 days, Hart would have to visit the site again. If he did not have to make any changes, he would charge another $500 to $600. Hart thought that the tree survey would remain valid for a year, but after a year he would have to survey the site again. A field visit to update a tree survey could cost as much as $1,500 to $2,000. Because Kieft's surveys and site plan were issued in April 2018, the trial court did not err by concluding that they held no present value because they would have to be redone according to Hart's testimony.

Defendant also claimed to have paid $4,250 to Revive Development for clearing the lot. However, plaintiff testified that $2,000 of the Revive Development bill was charged for regrading defendant's White Lake property, and she paid him $2,300. Although defendant denied that plaintiff paid him $2,300 for the Revive Development costs, the trial court credited plaintiff's testimony. This Court defers to the trial court's superior ability to judge the credibility of the witnesses. *Smith*, 331 Mich App at 215. There were also miscellaneous expenses for lot clearing in the amount of $1,038.27. The trial court did not clearly err by determining that defendant's remaining expenditures had no current value to the property because the clearing that was done in 2018 would have to be redone.

Defendant's remaining expenditures of $2,970 were for permits that had since expired. Neither party presented any evidence whether the permits could be renewed or if the parties had to reapply for permits. Accordingly, the trial court did not err by concluding that these expenditures failed to add value to the property.

In his arguments regarding unjust enrichment and his contribution to the building of the house, defendant fails to address any of the expenditures that plaintiff made on top of the purchase price of the property, such as the property insurance and taxes, the installation of the utility driveway, or the architectural plans. In addition, defendant ignores that plaintiff also paid for permits and a bond that no longer held any value. Plaintiff also testified that while she lived with defendant she bought the groceries, paid for the parties' social engagements and trips to Israel and Mexico, paid the utilities, and paid defendant's 2019 winter taxes. Plaintiff also gave defendant $5,400 on December 10, 2018, and $7,200 on January 18, 2019. Considering this evidence, the trial court did not err by concluding that defendant would be unjustly enriched if he were allowed to retain half of the value of the property.

Defendant also argues that the trial court erred by failing to apply *Takacs v Takacs*, 317 Mich 72, 82; 26 NW2d 712 (1947), in which the Court stated that "a deed or conveyance will be supported by a consideration of natural love and affection, or of a close relationship." In that case, the Court held that a father was not entitled to the cancellation of a deed to his son, reasoning that there was no question that the father had executed the conveyance out of affection for his son and desired to assist him and save him any inconvenience. *Id.* In addition, the Court observed that the father had instigated the transaction and acted solely out of love and affection for his son. *Id.* at 83.

In this case, while there is no dispute that the parties were in a serious, romantic relationship and were motivated by a desire to share a life together, the evidence demonstrated that plaintiff did not add defendant's name to the deed out of affection and a desire to assist defendant. Rather,

the parties agreed that plaintiff initially intended to be the sole owner of the property because she would be funding the entire purchase price. Although the parties' testimonies differed in some respects, they agreed that defendant refused to build a house on the property unless plaintiff put his name on the deed. It is also undisputed that a house was never built on the property. Plaintiff had the same affection for defendant and desire to share a life with him when she expressed her intention to solely own the property as she did when she added his name to the deed. Defendant's name was also placed on the deed with the understanding that defendant would be building a house on the property. Considering the evidence presented at trial, the trial court could properly find that this case was factually distinguishable from *Takacs*, 317 Mich at 82, because, although love and affection can constitute adequate consideration for a conveyance, that was not the consideration for plaintiff's agreement to place defendant's name on the deed in this case.

Considering the evidence, the trial court did not err by imposing a constructive trust on defendant's interest in the property and ordering defendant to convey his 50% interest in the property to plaintiff where plaintiff contributed 100% of the funds to purchase the property and defendant's name was added to the title only because he agreed to build a home on the property, which never happened. Although defendant contributed toward some of the costs in preparing to build a home, so did plaintiff, in addition to the purchase price of the property, and those contributions did not add any current value to the property. The trial court did not clearly err by concluding that plaintiff met her burden for establishing a constructive trust.

We reject defendant's efforts to frame this case as one involving a claim for breach of contract. Defendant argues that plaintiff breached the parties' contract first because she failed to provide the financial support to enable him to build the house after the breakup. Defendant contends that he provided adequate consideration toward their agreement by agreeing to build the house, but plaintiff breached the agreement, and therefore, plaintiff could not maintain a breach-of-contract claim against him and she is not entitled to equitable relief.

At the conclusion of the bench trial, however, plaintiff withdrew her breach-of-contract claim because there was no meeting of the minds on the material elements. Plaintiff also withdrew her claim to quiet title and asked the trial court to proceed only on the unjust-enrichment and constructive-trust claims. A review of the trial court's opinion reveals that the court did not base its decision on contract principles. Rather, the trial court answered defendant's arguments that plaintiff breached the agreement, and therefore, could not maintain this action against defendant for failure to perform. The trial court did not clearly err by finding that there was no evidence that plaintiff breached the agreement first. Defendant argues that plaintiff first breached the agreement when, in the summer of 2018, she declared that she would no longer support defendant while he built the house. However, plaintiff gave defendant $5,400 on December 10, 2018, $7,200 on January 8, 2019, and paid his winter taxes on his White Lake home. Plaintiff moved in with defendant in August 2018, and paid for the utilities, groceries, their social engagements, and two vacations. On the basis of this evidence, the trial court found that "[d]efendant breached the parties' agreement by failing to construct the home to which he agreed to do" and that "[s]uch a breach predates [d]efendant's claim that the [p]laintiff ceased offering to pay for the construction of the home." The evidence supports the trial court's finding. Moreover, the evidence established that a continuation of the agreement after the breakup of the relationship was impossible. The trial court did not clearly err by determining that defendant failed to build a house on the Farmbrook property and that plaintiff did not first breach the parties' agreement.

-5-

## IV. PARTITION

Defendant argues that if this Court finds that the trial court erred by imposing a constructive trust in favor of plaintiff, it should grant his claim for partition. "Actions . . . for the partition of lands . . . are equitable in nature." MCL 600.3301. The trial court stated: "[S]ince this Court finds that the Defendant did not build the home in exchange for his 50% interest, this Court finds that a partition in favor of Defendant would be unjust." Defendant's claim for partition is dependent upon a finding that he has an enforceable 50% interest in the Farmbrook property. Because the trial court did not err by ruling that it was inequitable for defendant to retain a 50% interest in the property and by imposing a constructive trust on defendant's 50% interest in favor of plaintiff, defendant's partition claim cannot succeed. Accordingly, the trial court did not err by dismissing this claim.

## V. FINDINGS OF FACT AND JUDICIAL BIAS

A party claiming judicial bias must overcome a heavy presumption of judicial impartiality. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). This Court will not find bias simply because the judge ruled against a party. See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). A judicial ruling will only constitute actual bias if the judicial opinion "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Cain v Dep't of Corrections*, 451 Mich 470, 496; 548 NW2d 210 (1996) (quotations marks and citation omitted).

Defendant has not made, or established, any claims of actual personal and extrajudicial bias. Rather, defendant claims that the trial court made several factual errors in its opinion and order that demonstrate its bias against him. Defendant contends that the factual errors adversely affected his substantial rights and, as such, this Court should reverse the trial court's decision.

We agree that the trial court made some factual misstatements in its opinion regarding the date that plaintiff moved into defendant's residence, defendant's agreement to provide material for the construction of the house, and defendant's incurring of costs for architectural drawings and a tree bond. None of these findings were material to the trial court's decision, nor did they demonstrate any bias or deep-seated favoritism or antagonism that could not support a fair judgment. Accordingly, defendant has not established that these misstatements warrant appellate relief. *Duray Dev, LLC,* 288 Mich App at 150.

Contrary to defendant's argument, the trial court never stated that defendant refused to build the home after the parties' breakup. Rather, the court stated that "after the parties separated[,] . . . and while [defendant] testified that he never refused to build the home, there was no further progress." Further, the trial court's statement that "[d]efendant claims he provided consideration in the form of love and affection" is supported by defendant's trial brief, in which defendant claimed that his consideration for his interest in the Farmbrook property included "preparing the Property, *love and affection*, or alternatively, his refusal to accept new business."

Defendant's remaining claims of error involve matters for which there was conflicting testimony. Defendant asserts that the trial court erroneously stated that "[t]here was also testimony that the parties agreed that Defendant would sell his existing home in White Lake Township when

the couple completed their home [and] [t]he proceeds from the sale of Defendant's home were to help equalize the parties' financial contribution toward the construction and improvement of the parties' home and purchase of the vacant land." Plaintiff testified that once the construction was finished and the construction loan was converted into a mortgage, they planned to put a value on defendant's work, defendant would sell his home, and the parties would contribute equally to the house and the property. Although defendant testified that he had no plans to sell his White Lake home, and that plaintiff had expressed to him that he should retain his White Lake home to secure his retirement income, it is clear from the trial court's opinion that it credited plaintiff's testimony with respect to this matter. This Court will not disturb a trial court's determination of credibility. *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). Thus, the trial court's finding was not clearly erroneous.

Next, defendant argues that the trial court's finding regarding the payments to Revive Development was erroneous. We disagree. The trial court properly recited the amounts of the payments to Revive Development for lot clearing. The court included the $2,300 payment that plaintiff testified that she made to defendant to reimburse him for the payments he made to Revive Development. The trial court further found, however, that regardless of any expenditures by defendant, "because the [d]efendant failed to build on the property, the money expended for the lot clearing has not value to either party." In this instance, the trial court weighed the evidence and the parties' testimony and concluded that defendant's expenditures did not add any value to the property. The trial court properly recited the evidence and came to a conclusion regarding the weight of that evidence. Because the evidence supports the trial court's finding, we will not disturb it. *Berger*, 277 Mich App at 707. Further, defendant has not demonstrated that this finding shows that the court was biased against him.

Defendant also challenges the trial court's finding that "[t]he evidence, however, established that [defendant] took jobs that he wanted, and in fact, had improved the value of his own home while being supported by [plaintiff]." Defendant argues that this finding is not supported by any testimony. However, the evidence presented and defendant's testimony indicated that defendant's income increased from 2017 to 2018, and remained the same from 2018 to 2019. Defendant also testified that, in 2018, he worked part time at his business and part time on his own home to prepare for plaintiff to move in. Defendant testified regarding the improvements he made to his White Lake house, which included the installation of 2,000 square feet of flooring. After reviewing the record, we are not left with a definite and firm conviction that the trial court's finding is erroneous. *Smith*, 331 Mich App at 215.

Defendant further argues that the trial court erred by finding that defendant was offered a substantial job in 2019 and turned it down. The trial court addressed this matter in the context of discussing, and rejecting, defendant's claims of lost opportunities for cabinetry jobs. It is apparent that a witness was confused about the year that defendant turned down the Maple Road job. The witness clearly testified that defendant turned down a substantial work opportunity on Maple Road, but gave both 2018 and 2019 dates for when this happened. Even if the trial court's finding that this occurred in 2019 was erroneous, considering the conflicting testimony, any error does not establish any bias by the court or deep-seated favoritism that could not support a fair judgment. *In re Contempt of Henry*, 282 Mich App at 680. Further, any error did not affect defendant's substantial rights, especially in light of the evidence that defendant's income remained relatively the same in 2017, 2018, and 2019.

Finally, defendant argues that the trial court erred by finding that plaintiff loaned him money to support himself. This statement was made in the context of the trial court reciting plaintiff's testimony regarding this subject. While plaintiff testified that she had given defendant money in December 2018 and January 2019, and that she paid his winter tax bill, she also testified that she assumed that defendant would pay her back. Contrary to what defendant argues, however, the trial court did not *find* that plaintiff loaned defendant money, it only recited plaintiff's testimony to that effect. More significantly, the court rejected plaintiff's request for an additional money judgment on the basis of its conclusion that it would be inequitable "to require [defendant] to repay those funds when [p]laintiff indicated the monies were not considered a loan." Thus, the trial court's discussion of this matter does not support a claim of judicial bias.

Affirmed. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michelle M. Rick
/s/ Michael J. Kelly
/s/ Michael J. Riordan